SHEET METAL EMPLOYERS' ASSOCIATION, INC., ET AL., PLAINTIFFS, *v.* GIORDANO ET AL., DEFENDANTS.

Common Pleas Court, Cuyahoga County.

No. 772745. Decided January 19, 1963.

*Messrs. Johnson, Weston, Blackmore, Cory & Hurd, Mr. Joseph Phillip Sullivan* and *Mr. Stephen J. Kovacik, Jr.,* of counsel, for plaintiff Sheet Metal Employers' Association, Inc.
*Mr. Andrew Warhola,* for plaintiff Franck & Fric.
*Messrs. Welsh, Sorin, Rabb & Cohn, Mr. Armand Cohn,* of counsel, for defendants Louis Giordano and George Regan.

(HODDINOTT, J., of Monroe County, sitting by assignment in Cuyahoga County.)

HODDINOTT, J.   Plaintiff Sheet Metal Employers Association, Inc., is a trade association of sheet metal contractors in the Cleveland metropolitan area extending over four counties. One of its members is Plaintiff Franck & Fric, Inc.

This suit involves a bid depository, something new in the construction industry. Similar organizations have operated in several other cities for a few years.

In the construction of a public building, the governmental authority usually lets a contract for the heating, ventilating and aid conditioning to what is called a mechanical contractor. The sheet metal work is then sublet to a sheet metal contractor whose firm bid was in the hands of the mechanical contractor at the time it made its bid.

A troublesome problem of the sheet metal industry is the practice of job shopping. Many hours are invested by the engineers and management of a sheet metal contractor in pre-

paring a bid for submission to the mechanical contractor. The latter may then proceed to play one bidder against another, getting each in turn to shave its bid as much as it will. Estimated profit is drastically reduced and financial loss threatens. There is little satisfaction in such a contract. The temptation to do inferior work and to cheat is strong.

To combat this practice, the two interested trade associations, Plaintiff Sheet Metal Employers Association and the Mechanical Contractors Association of Cleveland set up a bid depository in March, 1962. Rules and regulations were adopted and a bid depository committee, consisting of two members from each association, went into operation. Announcements of the bid depository and copies of its rules were sent to sheet metal and mechanical contractors in the area.

The procedure is for a mechanical contractor to notify the Central National Bank of Cleveland or Plaintiff Sheet Metal Employers Association of its intention to accept bids from the depository on a certain job. Sheet metal contractors then may submit to the bank's trust officer sealed bids addressed to named mechanical contractors. These are accompanied by duplicates, also sealed, whose function will be explained later. All sheet metal bids must be in by noon of the day before bids on the prime contract are to be opened by the governmental authority. The mechanical contractor may take all the sealed bids in the depository addressed to him, or some of them, or none of them.

After the prime contract bids are opened and read by the governmental authority on the next day, the duplicates of the bids accepted from the depository by the successful mechanical contractor are opened, and the lowest bid is certified by the executive secretary of the Sheet Metal Employers Association. Information on the low bid is made available to the other bidders in the depository.

If a mechanical contractor takes any sealed bids from the depository, it must accept the lowest of them. A sheet metal contractor who uses the depository cannot make bids outside, nor change his bids after the depository deadline. Otherwise, use of the depository is not compulsory.

Defendant Louis Giordano does business as Forest Hills Plumbing & Heating Company. In his employ is Defendant

George Regan, an engineer, who is primarily responsible for preparing job bids.

In the summer of 1962, Giordano wished to bid as mechanical contractor on the multi-million dollar Mayfield Heights high school job. Since it was to be the first air-conditioned school in this vicinity, the heating, ventilating and air conditioning contract would be substantial. Giordano and Regan knew of the bid depository, had a copy of its rules in their office, but had not used its services before. The depository was notified that Giordano would accept sheet metal bids through it.

At noon on July 30, 1962, Regan took delivery from the depository of six sealed bids addressed to Giordano. On behalf of his employer, he signed a receipt containing these word:

Pursuant to the provisions of the Bid Depository Rules and Regulations of the Sheet Metal Employers Association, we hereby acknowledge receipt of bids from Sheet Metal Contractors as indicated below: . . . .

Upon opening the bids, Regan found that the bid of A. A. Samuels Sheet Metal was lowest and that of Plaintiff Franck & Fric next, about $4400 higher. All bids were accompanied by bid bonds guaranteeing that the bidder would execute a contract if his bid were accepted. Samuels' bond, however, was for only 5% of the amount of the bid, whereas Franck & Fric and the other bidders had given 100% bonds.

Giordano's bid was due at the school board at 1:00 P. M., the next day. Regan made several telephone calls to the sheet metal bidders concerning details. During one, he asked R. A. Schuenaman, an officer of Plaintiff Franck & Fric, if Samuels' bid bond in the amount of only 5% disqualified that bid. Upon Schuenaman's saying he believed so, Regan asked him to get a ruling for him. Regan testified he called the depository bank's trust officer who suggested he call Plaintiff Sheet Metal Employers Association's executive secretary. That man was out of town. Regan testified he also tried to call the two sheet metal members of the bid depository committee, Hodous and Mannen, but they were not available. The next morning, around 10.30 A. M., Schuenaman called Regan and said he could not obtain a ruling on the point. Giordano then used Samuels' bid in computing his own mechanical contractor's bid, which was

submitted before 1:00 P. M., that day. Giordano was low bidder and eventually was awarded the contract.

Later, the same day, the bid depository committee during telephone conversations among themselves agreed upon the ruling that the Samuels' bid was not qualified because of the bid bond. Plaintiff Franck & Fric's bid was declared to be the lowest qualified bid and Giordano was so notified. Franck & Fric later tendered performance, and Giordano refused to enter into a contract. He announced his intention to accept the Samuels' bid, the lowest one, but did not do so when threatened with suit.

There was evidence that bid bonds, guaranteeing a successful bidder will execute a contract, have not been given customarily by sheet metal contractors. On the other hand, such bonds are required by law to accompany mechanical contractors' bids to governmental authorities. When the latter bid has been accepted, the successful mechanical contractor must give a performance bond guaranteeing its work, and it in turn usually requires performance bonds from the subcontractors to whom it awards business.

The bid bond of Samuels was in the amount of 5% rather than 100% through mere accident. He went to his bonding company and ordered the bond. The request was a novel one, not fully understood by the company, one of the best established in the field. Its agent consulted the Dodge Corp. construction reports which disclosed that a 5% bid bond was required by the Mayfield Heights School Board from the mechanical contractors bidding on this particular job. The company then executed a 5% bond for Samuels, and he attached it to his bid placed in the depository.

Bid bonds are issued almost gratuitously. Because Samuels' bonding company is willing to sell performance bonds to him, it will issue, for a charge of $5.00 per year, as many bid bonds as he requires. The understanding is that the company will get the performance bond business when Samuels is the successful bidder.

This Court finds that the bid depository rules and regulations do not place upon Defendant Giordano the duty of accepting Franck & Fric's bid, nor do they entitle the Plaintiffs to a judgment of specific performance.

Rule 8, providing for the bid bonds, does not disqualify a bid with less than a 100% bond. As amended, April 9, 1962, it provides as follows:

8. Any Mechanical Contractor receiving bids through the Depository and signing a receipt therefor agrees that on that particular job he will use only these bids received from the Depository in the preparation of his bid and if awarded the contract for the given job will in turn award the Sheet Metal Contract to the low bidder.

The Sheet Metal Contractor agrees to accept a contract with the Mechanical Contractor at the quoted bid and including the items as set forth in the issue of plan and specifications under which the bid was prepared *and to insure such agreement the Sheet Metal Contractor will submit a bid bond in the amount of the contract with each bid. A performance bond in the amount of the contract will be required upon acceptance of the bid.* (Emphasis in the original.)

The bidder obviously has a duty to furnish a 100% bond, but the rule does not state the penalty for its violation. This rule should be contrasted with Rule 6, which does provide for rejection of bids, the only rule to do so. The latter reads in part: "Incompletely filled in alternates and addenda shall void the bid." If a substandard bid bond is enough to disqualify a bid, then Rule 8 should specifically say so. The fact that the bond provision is italicized does not mean that a violation of it is fatal to the bid. Since the rules are seeking to introduce a new practice in the industry, a better interpretation of the typographical emphasis is that it is meant to catch the eye of the prospective bidder.

All of the pertinent rules should be construed together to determine what is the penalty for violating the bid bond requirement.

The executive secretary of the Sheet Metal Employers Association has not been given the power to disqualify bids for this or any other reason. Rule 4 reads thus:

4. At a time no sooner than one hour, after the public reading by the awarding authority, the Executive Secretary of the Sheet Metal Employers Association shall obtain from the Depository all the duplicate bids accepted by the successful Me-

chanical Contractor. These bids shall then be opened in the presence of a witnessing bank officer and the low bid certified.

The executive secretary is to perform only the mechanical function of certifying what is in fact the low bid.

Likewise, the bid depository committee does not have the bid disqualification power. Its functions are set out in Rule 11:

11. A committee composed of equal number of Mechanical Contractors and Sheet Metal Contractors shall be appointed to review and amend these rules and regulations as required. This committee shall also rule on qualification of the jobs for inclusion in the Depository such as size of Sheet Metal portion of work and territory covered by the Depository.

The action of the committee in the present instance was thus without authority.

The penalty for a substandard bond is that the mechanical contractor, Giordano in this case, can reject the bid it accompanies if he wishes. Rule 8, *supra*, requires the mechanical contractor to use *"these bids* received from the Depository in the preparation of his bid." Since obviously he will use only one sheet metal bid in compiling his own bid, then the mechanical contractor of necessity rejects the others. It is the mechanical contractor, under this rule, who "will . . . . award the Sheet Metal Contract to the low bidder." He and no one else has the power to determine who the qualified low bidder is.

The purpose of this new bid bond provision is to make sheet metal bids more reliable. It is primarily a protection for the mechanical contractor, and he has the power to waive it if he wishes.

Plaintiffs' interpretation of these rules is unreasonable. They would say in effect that Giordano was bound to accept a particular offer at the moment he drew the bids from the depository, even before he removed them from their envelopes. He could not know what sheet metal bid that would be until after his own bid was accepted, the duplicate envelopes opened, and the lowest bid acceptable to the depository committee was certified. He would be in an extremely poor position to submit a competitive bid because he would not know, perhaps within wide limits, what his own sheet metal cost would be.

Competition is the great regulator of our economic system.

It has an important, additional function in public contracts where it is the chief protection of the taxpayer. An unreasonable interpretation of the depository rules which inhibits competition and creates hazards beyond those normal to the business man is against the public interest. See 11 Ohio Jurisprudence (2d), 337, Contracts Sec. 99.

It is desirable that a mechanical contractor who draws several bids from the bid depository should have the discretion as to which one he will accept. This may be a matter which requires keen judgment. Job specifications are complicated by many factors, among them being the "alternates and addenda," referred to in Rule 6, *supra*. Responsibility of the bidder is of utmost importance. The General Assembly of Ohio has seen fit to give the school board in this instance the discretion to select the "lowest responsible" bid among the mechanical contractors. Section 3313.46, Revised Code. In another example of a public contract, a municipality must make its award to the "lowest and best bidder." Section 735.05, Revised Code. The mechanical contractor is in the most favorable position to judge what is really the best bid. He can be trusted to make the selection which is best for society because in this area the interests of the individual and the public coincide. It should not be lost sight of that in the case at bar Giordano sought to accept the sheet metal bid which was in fact the lowest.

In this cause, Defendant George Regan will be dismissed as a party, and judgment granted to Defendant Louis Giordano, doing business as Forest Hill Plumbing & Heating Company, against Plaintiffs Franck & Fric, Inc., and The Sheet Metal Employers Association, Inc., to the latter of whom will be taxed the costs. The attorneys for Defendant Giordano will prepare an entry in accordance with this Opinion.